UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KENNY CHESNEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | |
| | ) | JURY DEMAND |
| HARNEET PASRICHA d/b/a | ) | |
| COUNTY WEST and T.M. | ) | |
| ENTERPRISES NY INC. a/k/a | ) | |
| T.M. ENTERPRISES INC. a/k/a | ) | |
| T & M ENTERPRISES, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

### I. INTRODUCTION

1.      This is an action by Plaintiff, Kenny Chesney ("Chesney"), against Defendants

Harneet Pasricha ("Pasricha") d/b/a County West and T.M. Enterprises NY Inc. a/k/a T & M

Enterprises a/k/a TM Enterprises Inc. ("T & M"), for violation of Plaintiff's trademark rights

under the Lanham Act and the Tennessee Trademark Act; violation of Plaintiff's copyright rights

under the Copyright Act; violation of the Tennessee Consumer Protection Act, the Tennessee

Personal Rights Protection Act of 1984, and Tennessee common law; and for fraud,

misrepresentation, unfair competition, breach of contract, and unjust enrichment.  Plaintiff seeks

damages, including statutory penalties, injunctive relief, equitable relief, a declaratory judgment,

punitive damages, and attorney's fees.

### II. PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Kenny Chesney is an internationally-recognized musician who resides in

Franklin, Tennessee.

3. T.M. Enterprises NY, Inc. is a corporation organized under the laws of New York, with its principal place of business in New York City, New York.

4. Harneet Pasricha does business as County West, and resides in New York.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 1332(a). The amount in controversy exceeds $75,000. This Court has subject matter jurisdiction over associated claims pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367.

6. Venue is proper in this Court because Defendants have consented to venue under the terms of the Settlement Agreement discussed below and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this District.

7. This Court has personal jurisdiction over Defendants because Defendants have consented to personal jurisdiction under the terms of the Settlement Agreement discussed below and because Defendants have imported, distributed, offered for sale, sold, or shipped merchandise to persons within this District, Defendants regularly transact and conduct business within this District, and Defendants otherwise have made or established contacts within this District sufficient to permit the exercise of personal jurisdiction.

### III. FACTS

8. Plaintiff is a musician based in Nashville, Tennessee. Throughout his career, Plaintiff has trademarked and copyrighted various aspects of his work for use in commercial exploitation. At issue in this care are Plaintiff's name, photograph, likeness, and persona, as well as various trademarks and copyrights registered by Plaintiff.

9.     Plaintiff released the record "When the Sun Goes Down" in 2004, which included a track titled "Old Blue Chair." This album debuted number 1 on the Billboard charts, went multi-platinum according to the Recording Industry Association of America, and had sales of at least 4 million copies.

10.    Plaintiff released the record "Be as You Are (Songs from an Old Blue Chair)" in 2005, which again featured the track "Old Blue Chair." This album went gold according to the Recording Industry Association of America and had sales of at least 500,000 copies.

11.    In conjunction with the song "Old Blue Chair" and the album "Be As You Are (Songs from an Old Blue Chair)," Plaintiff created a logo that was based on a photograph of a guitar leaning against a palm tree, which he intended to use for clothing and other goods.

12.    Plaintiff also created his own label imprint under the Sony Music Nashville label called "Blue Chair Records."

13.    On August 14, 2007 Plaintiff filed U.S. Trademark Application Serial No. 77-977,490 for the "Palm Tree and a Guitar" design (pictured below) in Class No. 25 (the "Palm Tree Mark"). Plaintiff received U.S. Reg. No. 3,706,902 for the Palm Tree and Guitar design on November 3, 2009. (*See* **Exhibit 1**.)



14.     On August 31, 2007, Plaintiff filed U.S. Trademark Application Serial No. 77-269,582 for the word mark "BLUE CHAIR BAY" in Class 25. He received U.S. Reg. No. 3,677,816 and another registration, No. 4,154,278 for the BLUE CHAIR BAY word mark on September 1, 2009 and June 5, 2012, respectively (the "BLUE CHAIR BAY Word Mark"). (*See* **Exhibits 2** and **3**.)

15.     Plaintiff also registered the palm tree and guitar design logo with the U.S. Copyright Office on September 9, 2009. The logo has an effective registration date of September 22, 2009 and the registration number VA 1-704-888. (*See* **Exhibit 4**.)

16.     Plaintiff is therefore the original registrant and current owner of the following federal trademark registrations (the "Blue Chair Bay Marks" or the "Marks") issued by the United States Patent and Trademark Office ("PTO"):

(a)     U.S. Registration No. 3,706,902 for the Palm Tree Mark (discussed above), i.e. a mark consisting of a silhouette of a palm tree and a guitar, for use in clothing, namely jeans, shirts, shorts, t-shirts, and headwear (in international class 25). (*See* **Exhibit 1**.)

(b)     U.S. Registration No. 3,677,816 for the word mark BLUE CHAIR BAY for use in clothing, namely jeans, shirts, t-shirts, and headwear (in international class 25). (*See* **Exhibit 2**.)

(c)     U.S. Registration No. 4,154,278 for the word mark BLUE CHAIR BAY for use in clothing, namely bathing suits, beachwear, blouses, dresses, jackets, pants, polo shirts, shorts, sweatshirts, swimwear, and footwear (in international class 25). (*See* **Exhibit 3**.)

17.     Each of the registrations of the Blue Chair Bay Marks is valid and enforceable according to its terms.

18.     Plaintiff is also the creator, original registrant, and current owner of the following federal copyright registration (the "Blue Chair Bay Copyright" or the "Copyrighted Logo") issued by the United States Register of Copyrights:

> (a)     Registration Number VA 1-704-888 for the Palm Tree and Guitar design logo, as discussed above, i.e. a 2-dimensional artwork created by Kenny Chesney. (*See* **Exhibit 4**.)

19.     Plaintiff's copyright of the palm tree and guitar design logo is valid and enforceable.

20.     On October 31, 2007, Plaintiff signed a Master License Agreement with Latitude 17° S, LLC ("Latitude"), a Tennessee Limited Liability Company, to exploit the Blue Chair Bay brand, including the Blue Chair Bay Marks and the Copyrighted Logo (the "Master License Agreement") (attached as **Exhibit 5**.)

21.     The Master License Agreement required Latitude, among other things, to grant sublicenses for exploitation of the Blue Chair Bay brand "solely pursuant to, and as expressly set forth in, the Approved Sublicense Agreements" as defined by the Master License Agreement. (*Id.* at 2.)

22.     The Master License Agreement also held that sublicensees, and any sublicense agreement, must be approved in writing by Kenny Chesney. (*Id.* at 3.)

23.     The Master License Agreement prevented Latitude from assigning the Master License Agreement, or otherwise assigning, disposing, mortgaging, transferring, pledging,

encumbering, or sublicensing any of the rights received by Latitude in the Master License Agreement without the prior written consent of Kenny Chesney. (*Id.* at 5.)

24. At no time did Plaintiff approve in writing of any sublicenses to any of the Defendants or their agents under the Master License Agreement, or of any sublicense of the Blue Chair Bay Marks or the Copyrighted Logo to any of the Defendants or their agents.

25. At no time have any of the Defendants, either in their corporate or individual capacities, been authorized by Plaintiff to use the Marks, the Copyrighted Logo, or Plaintiff's name, photograph, likeness, and/or persona (Plaintiff's "Personal Rights") in manufacturing products for sale.

26. In 2012, Plaintiff became aware of a purported agreement between Latitude and T & M, as well as the existence and identify of Defendant Pasricha.

27. Plaintiff never authorized such an agreement.

28. Latitude lacked the authority to enter in to such an agreement without Plaintiff's approval.

29. The Master License Agreement with Latitude was terminated effective December 6, 2012.

30. After negotiations, during which time Defendants made various material representations, as detailed below, Plaintiff and Defendants signed a settlement agreement on January 8, 2013 (*see* **Exhibit 7**) (the "Settlement Agreement").

31. In the Settlement Agreement, Defendant T & M affirmed that it had "been using the BLUE CHAIR BAY word mark, the Palm Tree and Guitar Design, and Kenny Chesney's name (collectively, the "Chesney IP") in connection with clothing." (*Id.* at 1.)

32.    In the Settlement Agreement, Defendant T & M, as well as its officers, directors, owners, employees, affiliates, agents, or anyone else acting on its behalf, recognized that Kenny Chesney "is the sole and exclusive owner of the Chesney IP," i.e., the Blue Chair Bay Marks, the Copyrighted Logo, and Kenney Chesney's name, and agreed that it would "at no time do anything inconsistent with Kenny Chesney's ownership of the Chesney IP," nor "do or omit to do anything that would prevent, preclude, impede, or otherwise hinder or impair Kenny Chesney's use, registration, ownership, and enjoyment of the Chesney IP in connection with any goods or services." (*Id.* at 2.)

33.    Under the terms of the Settlement Agreement, Defendant T & M agreed to "stop using the Chesney IP in connection with the manufacture, sale, advertising, and promotion of its goods worldwide." (*Id.* at 1.)

34.    Under the terms of the Settlement Agreement, Defendant T & M agreed that the Settlement Agreement is "binding upon  . . . the parties . . . and their respective companies, officers, directors, shareholders, successors, transferees, licensees, heirs, successors, and assigns, and upon and to the benefit of their respective present and future affiliated and subsidiary companies and licensees." (*Id.* at 3.)

35.    Under the terms of the Settlement Agreement, Defendant T & M had a certain period of time to sell the products bearing the Blue Chair Bay Marks and the Copyrighted Logo and to cease using the Chesney IP, as defined in the Settlement Agreement, in sales, promotions, advertising, and other associated activities. After June 30, 2013, Defendant T & M was to have any remaining products bearing any of the Chesney IP, as defined in the Settlement Agreement, destroyed, and deliver certification of such destruction to Plaintiff.

36. During every exchange leading up to the signing of the Settlement Agreement, Defendants acted through Defendant Harneet Pasricha, or Ravi Bhalla, who purported to represent Defendant Harneet Pasricha.

37. Before and during the negotiation and signing of the Settlement Agreement, Defendant Harneet Pasricha was an officer, employee, and/or owner of Defendant T & M.

38. At the time of the filing of this suit, Defendant Harneet Pasricha still holds himself out an owner, officer, and/or employee of Defendant T & M.

39. Defendant Harneet Pasricha negotiated, reviewed, and approved the terms of the Settlement Agreement.

40. Shortly before the Settlement Agreement was signed, Plaintiff was informed that Tejinder J. Singh would sign the Settlement Agreement on behalf of Defendant T & M, rather than Harneet Pasricha, even though Harneet Pasricha had the authority to sign the Settlement Agreement on behalf of T & M.

41. Defendant Pasricha did not sign the Settlement Agreement in a planned attempt to defraud Plaintiff, breach the terms of the Settlement Agreement, and infringe on Plaintiff's rights to the Marks, the Copyrighted Logo, and Plaintiff's Personal Rights.

42. Defendant Pasricha made material misrepresentations, and concealed material facts, in the negotiation of the Settlement Agreement, in a successful attempt to induce Plaintiff into signing the Settlement Agreement.

43. Defendant Pasricha is bound by the terms of the Settlement Agreement yet has failed to cease using either Plaintiff's Marks, Plaintiff's Copyrighted Logo, or Plaintiff's Personal Rights in selling T & M's products in interstate commerce.

44.    Defendants continue to manufacture, or have manufactured, and advertise, promote, and sell products bearing the Blue Chair Bay Marks and the Copyrighted Logo, as well as using the Marks, the Copyrighted Logo, and Plaintiff's Personal Rights in statements, advertising, and in other circumstances in order to further sales.

45.    Plaintiff has not authorized Defendants' use of the Marks, the Copyrighted Logo, or Plaintiff's Personal Rights and has requested that Defendants cease such use.

46.    The unauthorized use of Plaintiff's Marks, Plaintiff's Copyrighted Logo, and Plaintiff's Personal Rights by Defendants is likely to cause confusion as to the authorization or sponsorship of Plaintiff of these products, as more fully discussed below.

47.    Plaintiff uses the "Blue Chair Bay" brand in many aspects of his commercial dealings, including his record label, his music, his tours, and certain products he sells.

48.    Concurrently with the cancellation of the Master License Agreement with Latitude and the signing of the Settlement Agreement, Plaintiff was planning the introduction and sale his own brand of rum utilizing the Blue Chair Bay Marks, as well as Plaintiff's Personal Rights. This product is called "Blue Chair Bay Premium Rum." Plaintiff actively promoted the "Blue Chair Bay" brand during his 2013, 46-date "No Shoes Nation" tour, and continues to do so today, using his Personal Rights as well as the Blue Chair Bay Marks and the Copyrighted Logo.

49.    Plaintiff currently explcits the Blue Chair Bay Marks and the Copyrighted Logo through the sale of Blue Chair Bay Premium Rum in retailers across the country. Plaintiff also exploits the Marks and Copyrighted Logo on the internet, through the use of an online website (www.bluechairbayrum.com) and a redirect URL (www.bluechairbaystore.com) that redirects visitors to the Blue Chair Bay Premium Rum home page. The Blue Chair Bay brand also uses

facebook and Twitter to promote the brand and Blue Chair Bay Premium Rum. (*See* https://www.facebook.com/BlueChairBayRum and https://twitter.com/bluechairbayrum.)

50.     The BLUE CHAIR BAY Word Mark is in clear evidence both on the products themselves, as well as associated packaging, advertising and promotional materials, and online. Furthermore, an excerpt of the lyrics from the song "Old Blue Chair" appears on the bottles.

51.     The Palm Tree Mark/Copyrighted Logo is also in clear evidence on the products themselves (specifically, the White Rum, as shown below) as well as on associated packaging, advertising and promotional materials, and online.



52.     Furthermore, Plaintiff has begun producing and selling apparel bearing the Blue Chair Bay Marks, as well as Plaintiff's Personal Rights, in connection with the introduction of his brand of Blue Chair Bay rum, as discussed above.

53.     This apparel, as demonstrated below in one example from the line of products, prominently features the Blue Chair Bay Marks, the Copyrighted Logo, and Plaintiff's Personal Rights.



54.     Plaintiff sold this merchandise during his 2013 tour, selling approximately 7,500 pieces at 27 venues across the United States.

55.     Plaintiff is working with a company to produce approximately 8-10 new styles of merchandise, the design of which will be finalized in the coming weeks, and which will be sold online in 2014.

56.     The likelihood of confusion between Defendants' products and Plaintiff's products is exacerbated by Plaintiff's legitimate and very public use of the Marks for his own premium rum products and apparel.

57.     Defendants' continued use of the Blue Chair Bay Marks and the Copyrighted Logo, not to mention Plaintiff's Personal Rights, in the unauthorized sale of their products confuses millions of Plaintiff's fans and customers into believing that Plaintiff supports, authorizes, or is any way affiliated with Defendants or their products, especially given Plaintiff's active use of the Blue Chair Bay Marks, the Copyrighted Logo, and his Personal Rights on his own, authorized products.

## IV.     CAUSES OF ACTION

### COUNT I

### Trademark Infringement/Unfair Competition under 15 U.S.C. § 1114

58.     The allegations of Paragraphs 1–57 of this Complaint are incorporated by reference as if fully set forth herein.

59.     Plaintiff's Marks have been registered as trademarks on the principal register in the PTO.

60.     Plaintiff is the registrant of the Marks.

61.     Without authorization, Defendants have used and continue to use Plaintiff's Marks in interstate commerce.

62.     The unauthorized use in commerce of Plaintiff's Marks by Defendants is likely to confuse Plaintiff's customers (including Plaintiff's fans) and create the impression that County West, Pasricha, and/or T & M are somehow associated with, endorsed or sponsored by, or affiliated with Plaintiff.

63.     Defendants' unauthorized use of Plaintiff's Marks constitutes infringement of the Blue Chair Bay Marks in violation of the provisions of 15 U.S.C. § 1114, the Tennessee Trademark Act (Tenn. Code Ann. § 47-25-512), and Tennessee common law.

64.     Plaintiff has been, and will continue to be, irreparably harmed unless Defendants are ordered to cease and desist from any use of the Marks.

65.     Plaintiff seeks and is entitled to recover damages from Defendants in an amount to be determined at trial, including statutory damages under the provisions of 15 U.S.C. § 1117, *et seq.*

66.     Plaintiff also seeks and is entitled to equitable relief under the provisions of 15 U.S.C. § 1118, including the delivery and destruction of all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the Defendants bearing Plaintiff's Marks, or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same.

## COUNT II

### False Designations of Origin under 15 U.S.C. § 1125(a)

67.     The allegations of Paragraphs 1-66 of this Complaint are incorporated by reference as if fully set forth herein.

68.     Plaintiff owns and has continuously used the Blue Chair Bay Marks in connection with Plaintiff's music, touring activities, and products for sale.

69.     The unauthorized use in commerce of Plaintiff's Marks by Defendants is likely to confuse Plaintiff's customers (including Plaintiff's fans) and create the impression that County West, Pasricha, and/or T & M are somehow associated with, endorsed or sponsored by, or affiliated with Plaintiff.

70.     Defendants' unauthorized use of Plaintiff's Marks constitutes false designations of origin in violation of the provisions of 15 U.S.C. § 1125(a).

71.     Plaintiff has been, and will continue to be, irreparably harmed unless Defendants are ordered to cease and desist from any use of the Marks.

72.     Plaintiff seeks and is entitled to recover damages from Defendants in an amount to be determined at trial, including statutory damages under the provisions of 15 U.S.C. § 1117, *et seq.*

73.     Plaintiff also seeks and is entitled to equitable relief under the provisions of 15 U.S.C. § 1118, including the delivery and destruction of all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the Defendants bearing Plaintiff's Marks, or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same.

## COUNT III

### False Advertising/Product Disparagement under 15 U.S.C. § 1125(a)

74.     The allegations of Paragraphs 1-73 of this Complaint are incorporated by reference as if fully set forth herein.

75.     Defendants have made, and/or are making, false and misleading statements in that the products bearing the Marks and sold or otherwise distributed by Defendants falsely indicate that the products associated therewith are connected with, endorsed or sponsored by, or affiliated with Plaintiff.

76.     The statements tend to deceive a substantial portion of Defendants' customers who purchase the products, given that these customers are likely to believe incorrectly that a relationship currently exists between Defendants and Plaintiff.

77.     The statements are material in that a perceived affiliation between the Defendants and Plaintiff (i.e., an authorized and official relationship) is likely the reason Defendants' customers purchased and continue to purchase the products.

78.     The statements, made by Defendants, have been introduced into interstate commerce by Defendants.

79.     The statements have caused Plaintiff significant harm, including, among other things, damage to his protected property interest in the Marks.

80.     Plaintiff has been, and will continue to be, irreparably harmed unless Defendants are ordered to cease and desist from any use of the Marks.

81.     Plaintiff seeks and is entitled to recover damages from Defendants in an amount to be determined at trial, including statutory damages under the provisions of 15 U.S.C. § 1117, *et seq*.

82.     Plaintiff also seeks and is entitled to equitable relief under the provisions of 15 U.S.C. § 1118, including the delivery and destruction of all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the Defendants bearing Plaintiff's Marks, or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same.

## COUNT IV

### Trademark Infringement under the Tennessee Trademark Act

83.     The allegations of Paragraphs 1-82 of this Complaint are incorporated by reference as if fully set forth herein.

84.     Defendants' actions, as previously alleged, constitute a violation of the Tennessee Trademark Act, Tenn. Code Ann. § 47-25-501, *et seq.*

85.    Plaintiff has been, and will continue to be, irreparably harmed unless Defendants are ordered to cease and desist from any use of the Marks.

86.    Plaintiff seeks and is entitled to recover damages from Defendants in an amount to be determined at trial, including statutory penalties under the provisions of Tenn. Code Ann. § 47-25-514.

87.    Plaintiff seeks and is entitled to an injunction prohibiting the manufacture, use, display or sale of any products bearing Plaintiff's Marks, any counterfeits, or any imitations thereof under Tenn. Code Ann. § 47-25-514.

88.    Plaintiff seeks and is entitled to have all products bearing Plaintiff's Marks to be delivered to Plaintiff or the Court for destruction under Tenn. Code Ann. § 47-25-514.

## COUNT V

### Trademark Infringement under Tennessee Common Law

89.    The allegations of Paragraphs 1-88 of this Complaint are incorporated by reference as if fully set forth herein.

90.    Defendants' actions, as previously alleged, constitute trademark infringement under Tennessee common law.

91.    Plaintiff has been, and will continue to be, irreparably harmed unless Defendants are ordered to cease and desist from any use of the Marks.

92.    Plaintiff seeks and is entitled to recover damages from Defendants in an amount to be determined at trial.

93.    Defendants has acted willfully, maliciously, and recklessly, thus entitling Plaintiff to punitive damages.

## COUNT VI

### Copyright Infringement Under 17 U.S.C. § 504(c)

94.     The allegations of Paragraphs 1-93 of this Complaint are incorporated by reference as if fully set forth herein.

95.     Plaintiff's Palm Tree and Guitar Design logo (the Copyrighted Logo) is an original copyrighted work under 17 U.S.C. § 101 *et seq.*

96.     Plaintiff is the creator and copyright owner, as those terms are defined by 17 U.S.C. § 101, of the Copyrighted Logo.

97.     Plaintiff is also the original registrant of the federal copyright registration number VA 1-704-888 for the Palm Tree and Guitar design logo, as discussed above. (*See* **Exhibit 5**.)

98.     Plaintiff's copyright of the Copyrighted Logo is valid and enforceable.

99.     Defendants have willfully, as that term is used and defined in 17 U.S.C. § 504, infringed Plaintiff's exclusive rights under 17 U.S.C. §§ 106 and 501 by copying (i.e. reproducing), distributing, and displaying publicly the Copyrighted Logo.

100.     Plaintiff seeks and is entitled to recover damages from Defendants in an amount to be determined at trial, including statutory damages, under the provisions of 17 U.S.C. § 504.

101.     Plaintiff seeks and is entitled to recover costs and attorney's fees under the provisions of 17 U.S.C. § 505.

102.     Plaintiff seeks and is entitled to equitable relief, including but not limited to the impoundment and disposition of any infringing articles (including products; plates, files, digital files, or any other articles used to reproduce Palm Tree and Guitar design logo; and records documenting the manufacture, sale, or receipt of things involved in the infringement) under the provisions of 17 U.S.C. § 503.

103.    Plaintiff also seeks and is entitled to injunctive relief under the provisions of 17 U.S.C. § 502.

## COUNT VII

### Unfair Competition under Tennessee Consumer Protection Act

104.    The allegations of Paragraphs 1-103 of this Complaint are incorporated by reference as if fully set forth herein.

105.    Defendants' actions, as previously alleged, constitute unfair competition in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*

106.    Defendants' unauthorized use of Plaintiff's Marks, Plaintiff's Copyrighted Logo, and Plaintiff's Personal Rights on and to sell its products was and is deceptive, within the meaning of the Tennessee Consumer Protection Act.

107.    Defendants' unauthorized use of Plaintiff's Marks, Plaintiff's Copyrighted Logo, and Plaintiff's Personal Rights on and to sell its products was and is a willful and/or knowing violation of the Tennessee Consumer Protection Act.

108.    Plaintiff has been, and will continue to be, irreparably harmed unless Defendants are ordered to cease and desist from any use of the Marks, the Copyrighted Logo, and Plaintiff's Personal Rights.

109.    Plaintiff seeks and is entitled to recover damages from Defendants in an amount to be determined at trial, including statutory penalties and treble damages under the provisions of Tenn. Code Ann. § 47-18-109.

## COUNT VIII

### Unfair Competition under Tennessee Common Law

110. The allegations of Paragraphs 1-109 of this Complaint are incorporated by reference as if fully set forth herein.

111. Without authorization, Defendants have passed off and continue to pass off their organization and products as being authorized, affiliated, or sponsored by Plaintiff.

112. Defendants have acted with the intent to deceive the public as to the authority of their organization to use the Marks, the Copyrighted Logo, and Plaintiff's Personal Rights on their products, website, and other materials.

113. The public, including both Plaintiff's and Defendants' customers, have been actually confused as to the authority of Defendants to use the Marks, the Copyrighted Logo, and Plaintiff's Personal Rights.

114. Plaintiff has been, and will continue to be, irreparably harmed unless Defendants are ordered to cease and desist from any use of the Marks, the Copyrighted Logo, and Plaintiff's Personal Rights.

115. Plaintiff seeks and is entitled to recover damages from Defendants in an amount to be determined at trial.

116. Defendants have acted willfully, maliciously, and recklessly, thus entitling Plaintiff to punitive damages.

### COUNT IX

### Violation of the Tennessee Personal Rights Protection Act of 1984

117. The allegations of Paragraphs 1-116 of this Complaint are incorporated by reference as if fully set forth herein.

118. Plaintiff has an exclusive property right in the use of his name, photograph, likeness, and/or persona.

119. Defendants are commercially exploiting Plaintiff's name, photograph, likeness, and/or persona (Plaintiff's Personal Rights) in an effort to support the trademark infringement, unfair competition, and other deceptive practices described herein, and without authorization from Plaintiff.

120. Defendants' actions constitute a violation of the Personal Rights Protection Act of 1984, Tenn. Code Ann. § 47-25-1102, *et seq.*

121. Plaintiff has been, and will continue to be, irreparably harmed unless Defendants are ordered to cease and desist from any use of Plaintiff's Personal Rights.

122. Plaintiff seeks and is entitled to recover damages from Defendants in an amount to be determined at trial, as well as attorney's fees, under the provisions of Tenn. Code Ann. § 47-25-1106.

123. Plaintiff seeks and is entitled to the impounding of all materials, or any part thereof, that have been made or used in violation of the Plaintiff's Personal Rights, as well as an injunction enjoining the use of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such materials may be reproduced under Tenn. Code Ann. § 47-25-1106.

## COUNT X

### Breach of Contract

124. The allegations of Paragraphs 1-123 of this Complaint are incorporated by reference as if fully set forth herein.

125.     Plaintiff and Defendants entered into the Settlement Agreement pursuant to which Defendants were to cease using Plaintiff's Marks, Copyrighted Logo, and Personal Rights in selling products or in any other manner.

126.     Sufficient consideration existed for the creation of the Settlement Agreement in that Defendants were to be released from the possibility of a lawsuit, assuming compliance with the Settlement Agreement, in exchange for which they would cease their infringing and otherwise unauthorized activities, inuring to the benefit of Plaintiff.

127.     Defendant T & M is bound by the Settlement Agreement by its terms and the signature of one of its agents.

128.     Defendant Pasricha d/b/a County West is bound by the Settlement Agreement because he is, or was at the time the Settlement Agreement was signed, an officer, director, or shareholder of T & M and/or is now a successor, transferee, licensee, heir, successor, assign, affiliated or subsidiary company of T & M.

129.     As described above, Defendants have breached the terms of the Settlement Agreement by, *inter alia*, using Plaintiff's Marks without authorization; using Plaintiff's Personal Rights without authorization; copying, distributing and/or publicly displaying Plaintiff's Copyrighted Logo without authorization; and failing to comply with the Settlement Agreement's terms regarding destruction of products bearing Plaintiff's Marks, Plaintiff's Copyrighted Logo, and/or Plaintiff's Personal Rights.

130.     Plaintiff has suffered substantial damages as a result of Defendants' breach of the Settlement Agreement, in an amount to be determined at trial.

131.     Plaintiff is entitled to his costs and attorneys' fees under the Settlement Agreement.

## COUNT XI

### Fraud and Misrepresentation

132. The allegations of Paragraphs 1-131 of this Complaint are incorporated by reference as if fully set forth herein.

133. Defendants made statements of present material fact during the negotiation of the Settlement Agreement in order to induce Plaintiff into signing the Settlement Agreement; to wit, that Harneet Pasricha was not the owner of T & M, that T & M simply needed time to sell off its excess stock of merchandise, even at a loss; and that Harneet Pasricha would act according to, and be bound by, the terms of the Settlement Agreement.

134. These statements were false.

135. Defendants knew that these statements were false at the time they were made, but Plaintiff was not aware of their falsity.

136. Defendants also concealed or suppressed material facts which they had a duty to disclose during the negotiation of the Settlement Agreement in order to induce Plaintiff into signing the Settlement Agreement; to wit, that Harneet Pasricha was operating an affiliated and/or parallel company, County West, and planned simply to transfer to T & M inventory bearing Plaintiff's Marks, Copyrighted Logo, and/or Plaintiff's Personal Rights to County West in an effort to avoid the terms of the proposed Settlement Agreement.

137. Plaintiff was not aware of these suppressed or concealed facts, and would have acted differently had he known them.

138. Defendants intended that Plaintiff rely on these statements and omissions in order to induce Plaintiff to sign the Settlement Agreement, and Plaintiff justifiably relied upon them when signing the Settlement Agreement.

139. In reliance on these statements and omissions, and with the explicit understanding that neither T & M, its officers, owners, employees, and other agents, nor any successor company, transferee or sublicensee would attempt to sell products with the Marks, the Copyrighted Logo, and/or Plaintiff's Personal Rights after a certain time, Plaintiff signed the Settlement Agreement.

140. In reality, Defendants planned to simply transfer the products from T & M to Pasricha or an affiliated company and continue to sell them, in violation of Plaintiff's rights.

141. This plan was orchestrated by Defendant Pasricha, and carried out under the guise of compliance with the strict terms of the Settlement Agreement.

142. Defendant T & M continues to claim that it has complied with the terms of the Settlement Agreement, though Defendant Pasricha, who is bound by its terms to desist using, in any way, the Marks, the Copyrighted Logo, and Plaintiff's Personal Rights, continues to use the same in commerce.

143. As a result of Defendant's materially false statements and omissions, Plaintiff sustained the damages described herein.

144. Defendants have acted willfully, maliciously, and recklessly, thus entitling Plaintiff to punitive damages.

### COUNT XII

### Unjust Enrichment

145. The allegations of Paragraphs 1-144 of this Complaint are incorporated by reference as if fully set forth herein.

146. Defendants derive monetary benefits from their continued use of Plaintiff's Marks, Plaintiff's Copyrighted Logo, and Plaintiff's Personal Rights including, but not limited

to, the appearance that their products are sponsored by Plaintiff and the money they receive for the sale of their products.

147.    Because Defendants are reaping monetary rewards based on the unauthorized use of Plaintiff's Marks, Copyrighted Logo, and Personal Rights, it would be unjust and inequitable for Defendants to retain those benefits without paying Plaintiff the value of the benefits.

148.    Defendants have acted willfully, maliciously, and recklessly, thus entitling Plaintiff to punitive damages.

## COUNT XIII

### Declaratory Judgment

149.    The allegations of Paragraphs 1-148 of this Complaint are incorporated by reference as if fully set forth herein.

150.    An actual controversy has arisen between Plaintiff and Defendants with respect to Defendants' use and infringement of Plaintiff's Marks, Copyrighted Logo, and Personal Rights, with Defendants claiming that they are entitled to use, display, and sell products bearing the same, and Plaintiff claiming that Defendants' use of Plaintiff's Marks, Copyrighted Logo, and Personal Rights violates federal and state law.

151.    Defendants' use and infringement of Plaintiff's Marks, Copyrighted Logo, and Personal Rights has caused and continues to cause Plaintiff to suffer damages and irreparable injury such that Plaintiff is entitled to a declaration of his rights under the law.

## COUNT XIV

### Injunctive Relief

152.    The allegations of Paragraphs 1-151 of this Complaint are incorporated by reference as if fully set forth herein.

153. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer irreparable injury.

154. Plaintiff does not have an adequate remedy at law and will continue to be harmed unless Defendants' actions are enjoined by this Court.

155. Plaintiff seeks and is entitled to injunctive relief, as more fully described below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor against Defendants, as follows:

A. Declaring that Defendants' actions constitute willful infringement of Plaintiff's trademark rights, copyright rights, and Personal Rights;

B. Impounding and disposing of all infringing materials (including products; plates, files, digital files, or any other articles used to reproduce Plaintiff's Marks, Plaintiff's copyrighted logo, or Plaintiff's Personal Rights; and records documenting the manufacture, sale, or receipt of things involved in the infringement) under the provisions of 15 U.S.C. § 1118; 17 U.S.C. § 503; Tenn. Code Ann. § 47-25-1106; and Tenn. Code Ann. § 47-25-514;

C. Permanently enjoining Defendants, along with their agents, servants, employees, officers, directors, parents, subsidiaries, affiliates, successors, assigns, and all others acting or purporting to act in concert with any of them, from using Plaintiff's Marks or otherwise infringing upon or diluting in any manner Plaintiff's exclusive rights in the Marks;

D. Permanently enjoining Defendants, along with their agents, servants, employees, officers, directors, parents, subsidiaries, affiliates, successors, assigns, and all others acting or purporting to act in concert with any of them, from using Plaintiff's Copyrighted Logo or otherwise infringing upon in any manner Plaintiff's exclusive rights in the Copyrighted Logo;

E.     Permanently enjoining Defendants, along with their agents, servants, employees, officers, directors, parents, subsidiaries, affiliates, successors, assigns, and all others acting or purporting to act in concert with any of them, from using Plaintiff's name, photograph, likeness and/or persona, or otherwise infringing upon in any manner Plaintiff's exclusive rights in his name, photograph, likeness and/or persona;

F.     Awarding Plaintiff damages, including statutory damages and/or treble damages pursuant to 15 U.S.C. § 1117, statutory damages under 17 U.S.C. § 503, statutory and treble damages under Tenn. Code Ann. § 47-25-514, statutory and treble damages pursuant to Tenn. Code Ann. § 47-18-109, and punitive damages sustained as a consequence of Defendants' infringement of the Marks; Defendant's infringement of the Copyrighted Logo; Defendant's unauthorized use of Plaintiff's Personal Rights; Defendant's breach of contract; Defendant's fraud and misrepresentation; Defendant's unfair competition; and Defendant's deceptive practices.

G.     Ordering disgorgement from Defendants, and an accounting thereof, with respect to Defendants' unjust enrichment at Plaintiff's expense;

H.     Awarding Plaintiff pre- and post-judgment interest;

I.     Awarding Plaintiff his attorneys' fees and costs, as provided under the Settlement Agreement; 15 U.S.C. § 1117; 17 U.S.C. § 505; Tenn. Code Ann. § 47-18-109; and Tenn. Code Ann. § 47-25-514; and

J.     Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

**NEAL & HARWELL PLC**

By: _____
William T. Ramsey, # 009245
James G. Thomas, #007028
John E. Haubenreich, #029202

150 Fourth Avenue North, Suite 2000
Nashville, TN 37219
(615) 244-1713 Telephone
(615) 726-0573 Facsimile

*Counsel for Plaintiff*